IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SHAUN D. ROBERTSON, | CV-21-111-M-DLC-KLD |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE |
| S.T.A.R.T. PROGRAM, et al., | |
| Defendants. | |

By Order of October 27, 2021, this Court directed Plaintiff Shaun D.

Robertson, a state prisoner proceeding without counsel, to file an Amended

Complaint, if he was able, to remedy the deficiencies the Court found in its initial

screening of his Complaint. (Doc. 6.) Robertson complied on December 2, 2021.

(Doc. 12.) By separate Order, the Court has directed that some of Robertson's

claims be served. However, the Court recommends dismissal of the following

claims and defendants.

## I.  SCREENING ANALYSIS OF AMENDED COMPLAINT

Robertson was held at the START Facility in Anaconda, Montana for

several months in 2020. Robertson asserts violations of his Eighth and Fourteenth

Amendment rights, related to an assault he suffered and various other issues at the

facility.[1] Robertson heeded some of the direction in this Court's prior order and removed some of the defendants and claims from his Amended Complaint. However, he continues to allege too much against some defendants. Robertson can only properly state claims regarding Defendants' treatment of *him*, not by alleging general complaints about how the facilities are run.

## A. Specific Defendants

Robertson's Amended Complaint names Bob Thatcher, Brian Hettick, Bob Olsen, and Sheila Johnson as defendants.[2] (Doc. 12 at 2-3.)

### 1. Thatcher

Thatcher is apparently the owner of the START facility at which Robertson was held. Robertson was advised in this Court's prior order that Thatcher could not be held liable simply as the owner; there must be some allegation of his own personal responsibility for violations of Robertson's rights. Section 1983 imposes individual liability upon state actors only when their personal conduct violates a plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-

---

[1] At this point, it is unclear what Robertson's incarceration status was while he was at START. The Eight Amendment applies to convicted prisoners in a way that it does not to pretrial detainees. However, for the purposes of this analysis, whether his claim arises under the Eighth or Fourteenth Amendment can be postponed to further development by the parties.

[2] Robertson's caption includes the START facility itself, which will be discussed and recommended for dismissal below.

94 (1978). This can be established in two ways.  First, an individual can be held

liable for his or her own personal acts that directly cause an injury. Second, an

individual can be held liable in his or her individual capacity under a theory of

supervisory liability. To impose liability under Section 1983 against a supervisor, a

plaintiff must establish the supervisor's prior knowledge of unconstitutional

conduct committed by subordinates that would give the supervisor notice of the

need for changes.  *Howell v. Earl*, 2014 WL 2594235 (D. Mont. 2014).

> "A showing that a supervisor acted, or failed to act, in a manner that
> was deliberately indifferent to an inmate's Eighth Amendment rights
> is sufficient to demonstrate the involvement – and the liability – of
> that supervisor. Thus, when a supervisor is found liable based on
> deliberate indifference, the supervisor is being held liable for his or
> her own culpable action or inaction, not held vicariously liable for the
> culpable action or inaction of his or her subordinates."

*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (holding that "a plaintiff

may state a claim against a supervisor for deliberate indifference based upon the

supervisor's knowledge of and acquiescence in unconstitutional conduct by his or

her subordinates"). A supervisor may be liable:  (1) for setting in motion a series of

acts by others, or knowingly refusing to terminate a series of acts by others, which

they knew or reasonably should have known would cause others to inflict

constitutional injury; (2) for culpable action or inaction in training, supervision, or

control of subordinates; (3) for acquiescence in the constitutional deprivation by

3

subordinates; or (4) for conduct that shows a reckless or callous indifference to the rights of others. *Larez*, 946 F.2d at 646.

Robertson's specific allegations against Defendant Thatcher are that Robertson sent him numerous "letters and communications," and that he "should have been aware…" (Doc. 12 at 4.) Robertson also includes a page of eleven other claims against Thatcher. (Doc. 12-2 at 1.) Several of these claims do not get out of the gate, either by failing to allege a cognizable federal claim or failing to allege sufficient facts to support a potential claim. Several claims do not assert anything that could be construed as a federal claim: not responding to grievances[3], not

---

[3] Robertson is mistaken in his assumption that failure to answer a grievance is a constitutional violation. While "[i]t is well-established that, among the rights they retain, prisoners have a First Amendment right to file prison grievances," they lack a separate constitutional entitlement to a specific prison grievance procedure. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.1988). **Error! Main Document Only.**"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993); *Mann*, 855 F.2d at 640 (finding that the due process clause of the Fourteenth Amendment creates "no legitimate claim of entitlement to a [prison] grievance procedure"). Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment.

In addition, **Error! Main Document Only.**the violation of a prison policy, such as a grievance procedure, is not in and of itself actionable under § 1983. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995) (no constitutionally protected liberty interest in prison regulations phrased in mandatory terms); *Bostic v. Carlson*, 884 F.2d 1267, 1270 (9th Cir. 1989) (prison's failure to meet guidelines or follow regulations "would not alone constitute a denial of due process") (dictum). **Error! Main Document Only.** His allegations do not state a claim under § 1983 and therefore should be dismissed.

calling Robertson's emergency contact, not being present, and nepotism. (Doc. 12-2 at 1.) These claims should all be dismissed.

A few of Robertson's claims against Thatcher could theoretically state a federal claim but as pled by Robertson are factually deficient. These claims include his allegation that START has insufficient disabled inmate accommodations, denial of access to a law library, denial of dental assistance, responsibility for excess inmate population, and lockdown for a month during a COVID episode. (Doc. 12-2 at 1.) All of these complaints fail to allege how or why Thatcher is responsible for or was aware of these issues, other than generally as the owner of START. Nor do they include facts that show Robertson himself was injured by any of these alleged violations and could therefore state a claim. These claims should all be dismissed.

Robertson does, however, sufficiently allege enough to state a preliminary failure to train claim against Thatcher. (Confusingly, he alleges both that Thatcher improperly trained his security officers and guards, and that Thatcher "wasn't aware of how security was run.") (Doc. 12-2 at 1.) "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982); *see also Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001). In particular, prison officials have an affirmative duty, under the Eighth Amendment,

to protect inmates from violence at the hands of other inmates. *Farmer*, 511 U.S. at 833. Under certain circumstances, if a failure to train was tantamount to a failure to protect, Robertson may state a claim against Thatcher. By separate order, the Court will direct service on Thatcher of Robertson's failure to train claim.

    2.  Olsen

Robertson's allegations against Olsen are substantially similar to those against Thatcher. Robertson's specific allegations against Olsen include that he never responded to grievances and would not answer questions in person or respond. (Doc. 12 at 4 and 7.) He also "had 1st hand knowledge and still continued to allow [sic]." (Doc. 12 at 4.) Robertson then lists a page of grievances with the names Bob Olsen and Brian Hettick at the top. The specific allegations do not identify which, if either, of those two people were responsible for any of the listed acts. Further, the acts themselves do not rise to the level of constitutional violations, without more detail, as described above regarding Thatcher. In fact, the claims raised against Olsen and Hettick on this list are substantially the same as against Thatcher, and for the same reasons, should be dismissed.  For example, "failed to keep inmates safe during Covid-19 outbreak," does not assert what should have been done differently, or whether Robertson himself got Covid or otherwise suffered from these acts. (Doc. 12-2 at 2.) Failure to contact Robertson's emergency contact after his leg was broken is not a federal claim. As with

Thatcher, Robertson has only stated a plausible claim of failure to train against

Olsen.

### 3. Hettick

Robertson's specific allegations against Hettick include that Hettick saw the

assault on security footage. (Doc. 12 at 5.) The statement is ambiguous; it is

unclear whether Hettick saw it as it was going on or later. However, Robertson

may state a claim for failure to protect if Hettick was deliberately indifferent to

Robertson's safety at the time.

Otherwise, Robertson's claims against Hettick, listed on the same page as

those against Olsen, suffer from the same infirmities, especially given that Hettick,

as head of security, would not have as broad a scope of authority as Olsen himself.

Therefore, the only claims that should proceed against Hettick are the allegation

that he may have failed to intervene at the time, and that he failed to properly train

his guards.

### 4. Campbell, Strutzel, Lovshin, MSP

Robertson has not named George Strutzel, Kris Lovshin, MSP, and Ryan

Campbell in his Amended Complaint. These defendants should be terminated from

the docket.

### 5. START Program

Robertson has named the START program in his caption but has not made

any specific allegations regarding START in the body of the Amended Complaint.

The START Program is not a legal entity capable of being sued, as a program

operated by a corporation, and is not a person within the meaning of 42 U.S.C. §

1983. START should be removed from the caption.

6. Johnson

Robertson alleges that nurse Sheila Johnson denied requests for medical

treatment. (Doc. 12 at 4.) Robertson sufficiently alleges that he was seriously

injured in the assault, but he also states that he received medical care at the

hospital. It is not clear from what he has alleged whether he asserts a claim against

Defendant Johnson for anything related to the immediate results of the assault. He

asserts that he had a dental problem that was not treated, but he states nothing

specific about who he asked for relief, and what happened. He provides one date,

April 14, 2020, but does not state what occurred on that date. These are insufficient

allegations to allege deliberate indifference to a serious medical need.

He does specifically state that he was denied physical therapy several times

from August through October. (Doc. 12-1.)  He also asserts that he was denied

various medications and mental health treatment. For screening purposes,

Robertson has alleged sufficient facts to state an 8th Amendment denial of medical

care claim against Defendant Johnson.

He has not, however, stated a claim regarding Covid, his vegan diet and

calling his emergency contact. Those claims should be dismissed.

## B. Requested Relief

Robertson appears to seek compensation for the loss of a ring and watch lost by the administration and head of security at START. (Doc. 12-1.) (He did not put this request in the request for relief section of his Complaint, but he reiterates the costs at Doc. 12-1 and Doc. 12-2 at 2 and sought it in his original Complaint.) As explained previously, prisoners have a protected interest in their personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property (one carried out pursuant to established state procedures) is actionable under the Due Process Clause. *Hudson v. Palmer*, 468 U.S. 517, 532, n. 13 (1984) (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985). On the other hand, "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to...property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986) (emphasis in original). The Montana Tort Claims Act, Mont. Code Ann. §§ 2–9–101, et seq., provides an adequate post-deprivation remedy for the loss of property caused by a governmental entity. *See* Mont. Code Ann. § 2–9–101(1) (2019). Any claim for the loss of these items is actionable only under the Montana Tort Claims Act, to which Robertson refers in his Complaint. The MTCA has its own procedure; that request for relief should not be heard here.

Accordingly, the Court issues the following:

**RECOMMENDATIONS**

1.  The Clerk of Court should terminate the START Facility Program, Kris Lovshin, START Security Guards, Ryan Campbell, and Montana State Prison as defendants in this action.

2.  All claims against Thatcher and Olsen, other than a failure to train claim, should be dismissed.

3.  All claims against Hettick should be dismissed, other than a failure to protect claim and a failure to train claim.

4.  All claims regarding medical care should be dismissed except denial of physical therapy, medications, and mental healthcare against Sheila Johnson.

4.  At all times during the pendency of this action, Robertson must immediately advise the Court of any change of address and its effective date. Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

**NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may file objections to these Findings and Recommendations within fourteen days after service.  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the

right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 23rd day of February, 2022.

Kathleen L. DeSoto
United States Magistrate Judge